WALL ET AL. V. GARRISON ET AL.

1. A livery-stable keeper, who is also an innkeeper, and who fails to show that the owner of horses which he has kept and cared for was his guest, cannot set up the innkeeper's lien at common law.

2. Act of Colorado, February 18, 1881, on the subject of liens, entitled "An act to amend chapter 59 of the General Laws, and to repeal all laws inconsistent therewith," being obnoxious to the constitutional requirement that the subject of an act shall be stated in the title, cannot be sustained as an independent act, and, the act which it purports to amend having been repealed, it is void.

*Appeal from District Court of Lake County.*

ACTION by David K. Wall and John A. Witter against Emma D. Garrison and A. J. Quate. Judgment for defendants, and plaintiffs appeal.

Messrs. PATTERSON and THOMAS, for appellant.

DE FRANCE, C. David K. Wall and John A. Witter, the plaintiffs, brought this action against Emma D. Garrison and A. J. Quate, the defendants, to recover the possession of five horses, which were alleged in the complaint to be the property of the plaintiffs, and to be

wrongfully detained from their possession by the defendants. The action was brought in July, 1882, in the district court of Pitkin county, and was removed to Lake county for trial. The defendants denied the allegations of the complaint, and alleged that they had a lien upon said horses, as stable-keepers, for the sum of $300, for caring for, feeding and keeping the same in their stables. The plaintiffs claimed these horses under and by virtue of two chattel mortgages, executed and delivered to them by Rockwell and Bicknell, the proprietors of a stage line between Leadville, in the county of Lake, and Ashcroft, in the county of Pitkin,— one under date of February 20, 1882, and the other under date of March 15, 1882. These mortgages were given to secure the payment of certain indebtedness therein mentioned, and covered the horses in dispute and other property. The mortgagors remained in possession of the mortgaged property — the mortgages providing therefor; and, subsequently to the execution and record of said mortgages, the mortgagors contracted with the defendants for the care and feed for which the latter claim a lien. Each mortgage contained a condition to the effect that the mortgagees might take possession of the mortgaged property at any time they might deem themselves insecure; and by reason of the failing circumstances of the mortgagors, and by virtue of this insecurity clause, the plaintiffs sought to take possession of the mortgaged goods and chattels, and the mortgagees agreed to deliver such possession over to them; but the defendants, having these five head of horses in their possession, refused to deliver them to the plaintiffs, and by reason of such refusal, and their detention of said horses, this action was brought. A trial was had to the court, a jury having been waived, and judgment was rendered in favor of the defendants. The plaintiffs have appealed to this court, and ask for a reversal of such judgment. The defendants have failed to make an appearance here, and the cause has been submitted *ex parte*.

If the defendants were not entitled to the lien claimed by them at the time the action was brought, or if they were so entitled, but their lien was subject to the rights of the plaintiffs under their mortgages, then the judgment, we think, should be reversed; as the evidence was otherwise sufficient to warrant a recovery by the plaintiffs. A livery-stable keeper had no lien at common law. *Grinnell v. Cook*, 3 Hill, 487, and cases cited. While the evidence of the defendants shows that they were innkeepers, and that the stables where they kept and cared for the horses in question, as well as other stock, for Rockwell and Bicknell, were used in connection with their business as innkeepers, yet it fails to show that either Rockwell or Bicknell was a guest at their inn. The defendants, therefore, had no lien as innkeepers. *Grinnell v. Cook*, above cited. There is some evidence tending to show that the lien claimed existed by virtue of a special agreement; but such a lien is not set up in the answer, and, if it were, it could not avail against the plaintiffs, as the evidence fails to show that the plaintiffs were a party to such agreement. Without their assent it could not take precedence over their mortgages, which were prior in point of time. *Bissell v. Pearce*, 28 N. Y. 252; *Sargent v. Usher*, 55 N. H. 287.

But from the record we infer that the defendants relied upon a statutory lien, and that the statute so relied upon is that found in the Session Laws of 1881, at page 176, entitled "An act to amend chapter 59 of the General Laws, and to repeal all laws inconsistent therewith," approved February 18, 1881. Chapter 59 of the General Laws, to which this act professes to be an amendment, was repealed by an act of the same legislature, approved February 12, 1881 (Sess. Laws, 1881, § 18, p. 175). By virtue of a provision of the constitution, neither of these acts could take effect until the expiration of ninety days from and after the date of its approval. At the time the former act was to take effect as an amendment to an-

other law, such other law was not in existence. It cannot, therefore, be deemed valid, unless it can be upheld as an independent statute. But the subject thereof is not expressed in its title; and, considered in the light of an independent act,— a law complete within itself,— it is obnoxious to section 21, article 5, of the constitution, which requires, among other things, that the subject of every legislative act "shall be clearly expressed in its title." This provision of the constitution is mandatory. *Railroad Co. v. People*, 5 Colo. 40; *People v. Fleming*, 7 Colo. 230. This chapter (ch. 59, Gen. Laws), which was repealed by the act approved February 12, 1881, contained the only statutory provision of this state, then in existence, concerning liens in favor of livery-stable keepers. No act was passed by the legislature which repealed the same, as a substitute therefor, except that of February 18, 1881. As this act must be held nugatory, there was no statute of this state in existence, at the time the lien claimed by defendant is alleged to have accrued, providing for or authorizing the same. We have already seen that such a lien is not authorized by the common law. It follows that the defense, setting up such lien, cannot be sustained as a valid defense to the action. The judgment should be reversed, and a new trial awarded.

STALLCUP and RISING, CC., concur.

PER CURIAM. For the reasons assigned in the foregoing opinion the judgment of the court below is reversed.

*Reversed.*